. 760 P.2d 1286

**In the Matter of Mike L. BENAVIDEZ, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 17725.**

Supreme Court of New Mexico.

Sept. 12, 1988.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

William C. Marchiondo, Albuquerque, for respondent.

## OPINION

PER CURIAM.

This matter having come before this Court after disciplinary proceedings conducted pursuant to SCRA 1986, Rules Governing Discipline, wherein attorney Mike L. Benavidez was found to have committed violations of the former Code of Professional Responsibility and of the present Rules of Professional Conduct involving invasion of a trust account, failure to maintain appropriate records, dishonesty, negligence, conflict of interest, and cumulative misconduct that adversely reflects on his fitness to practice law, the Court adopts the Disciplinary Board's findings and conclusions. We modify the Disciplinary Board's recommendation with regard to sanction and indefinitely suspend Mike L. Benavidez pursuant to SCRA 1986, 17-206(A)(3).

The Specification of Charges evolved from eight disciplinary complaints; six of the charges have resulted in findings of disciplinary violations. During October of 1985, Benavidez filed a claim for worker's compensation benefits on behalf of his client Lorenzo Abad. A lump-sum settlement was entered into by the parties on or about May 8, 1986, with Abad to receive the sum of $9,000.00. Prior to the time that Benavidez deposited the settlement check in his trust account, however, Benavidez made several advances to his client out of the trust account in the total sum of $1,573.42. Benavidez' conduct is in this instance violative of NMSA 1978, Code of Prof.Resp., Rules 9-102(A), 9-102(B)(3), 5-103(B), and 1-102(A)(6) (now SCRA 1986, 16-115[A], 16-108[A], and 16-804[H]).

Artemisa Felix retained Benavidez during the summer of 1984 to consolidate records of title in her name subsequent to the death of her husband. A formal probate proceeding was initiated by Benavidez during August of that same year, but the probate had not been completed nor the title to the real property transferred to Mrs. Felix by the date of the hearing in this disciplinary matter on November 11, 1987. Neither the withdrawal of Benavidez' associate nor the termination of his secretary materially affected his ability to complete the matter for which he had been retained; his actions were without excuse. Benavidez' conduct violated NMSA 1978, Code of Prof.Resp., Rule 6-101(A)(3) (now SCRA 1986, 16-103).

Buel and Shirley Adkins hired Benavidez to represent them in a case involving an automobile accident and a subsequent bankruptcy. Citizens' Bank in Las Cruces had a first lien on the automobile which was involved in the accident and, as a lienholder, had an interest in the insurance proceeds that were paid as a result of damage to that automobile. Allstate Insurance Company issued a draft jointly payable to "Buel Adkins, Mike L. Benavidez and Citizens' Bank of Las Cruces," and the draft was received by Benavidez. Benavidez and Adkins endorsed the draft, but it was not endorsed by a representative of Citizens' Bank of Las Cruces. On February 28, 1986, Benavidez negotiated the draft and deposited it into his trust account

at the Western Bank of Las Cruces although the Citizens' Bank had authorized neither the negotiation nor the deposit.

Upon becoming aware of the location of the check on or about March 21, 1986, the attorney for Citizens' Bank demanded release of the draft. The demand was reiterated at the first meeting of creditors in the Adkins' bankruptcy. Benavidez falsely told the Bank's attorney that the draft's proceeds had been transferred to the trustee in bankruptcy. The insurance proceeds were never inventoried as part of the Adkins' bankruptcy estate, however. Citizens' Bank ultimately received full proceeds by check drawn on Benavidez' Trust Account on or about November 13, 1986.

During February of 1986, Benavidez wrote a letter to the Bank in which he stated that Mr. and Mrs. Adkins had filed a bankruptcy and that an "automatic stay" existed which prevented the enforcement of any liens. This statement was untrue. The bankruptcy was not filed until on or about July 24, 1986. Benavidez' actions during his representation of the Adkins violated NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(4), 1–102(A)(6), and 7–102(A)(5) (now SCRA 1986, 16–804[C], 16–804[H], and 16–401[A]).

Cynthia Gonzales retained Benavidez during May of 1985 to represent her in a dispute against Memorial General Hospital in Las Cruces and in a subsequent bankruptcy. In August of the same year, Brokerage Services, Inc. issued a medical insurance check payable to Memorial General Hospital for medical services rendered to Ms. Gonzales and forwarded the check to her. Without being authorized to do so by the Hospital, Benavidez deposited the check in his trust account. Benavidez did not notify the Hospital of his actions, and he subsequently ignored three demands made by the Hospital's attorney for the return of the proceeds. Only after suit was filed in January of 1987 were the funds restored to the Hospital. Benavidez' conduct in this case violated NMSA 1978, Code of Prof.Resp., Rule 1–102(A)(4) (now SCRA 1986, 16–804[C]).

Dorothy Hatch mortgaged six hundred (600) acres of real estate in Rio Arriba County as collateral for a bail bond in the amount of $80,000 during December of 1983. The cost of the bond was $16,200.00. During May of the following year, suit was filed against Ms. Hatch for collection of the $16,200.00 and to foreclose on the mortgage. Ms. Hatch retained Benavidez, who helped her decide to sell a portion of her property to satisfy her obligation. Benavidez then introduced Hatch to Frank Luchini as a potential purchaser, although Benavidez and Luchini had an on-going attorney/client relationship (about which Hatch was not advised). Hatch and Luchini entered into an agreement for purchase by Luchini of 250 acres for $28,000. On or about November 12, 1985, Luchini tendered the purchase price to Benavidez with the understanding that Benavidez was acting as his (Luchini's) attorney. There was no written contract, and Benavidez negotiated a $28,000 draft without accounting for the proceeds. Benavidez subsequently opened an account at Western Bank designated as the "Mike L. Benavidez ITF Frank Luchini" account in the amount of $25,000. Benavidez made no accounting for the $3,000 difference between the amount tendered by Luchini and the amount deposited. In fact, the $3000 was used by Benavidez to pay a portion of the legal fees owed to him by Hatch. Benavidez closed the Luchini account on or about April 7, 1987, by withdrawing the sum of $25,312.91. He neither deposited these funds into his trust account nor accounted for them. Subsequently, in June 1987, Benavidez deposited $27,000 into his trust account; that sum consisted of a $13,000 check from L & C Construction Co. Inc. (payable to Hatch and Benavidez); a $9,000.00 settlement check (payable Lorenzo Abad); and Benavidez' personal check for $6,000. The account's balance prior to this deposit was $3,488.91. After the $27,000 deposit, Benavidez wrote a trust account check to the order of Luchini in the amount of $29,242.37. Such conduct violated NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(6), 4–101(B)(2), 5–105(A), 9–

102(A), and 9–102(B)(3) (now SCRA 1986, 16–804[H], 16–106[A], 16–108[A], 16–109[A], 16–109[B], 16–107[A], 16–202[B] and 16–115[A] ).

In another worker's compensation matter Benavidez represented Velia Saenz during January of 1987. Benavidez entered into a stipulation on Saenz' behalf which provided that Saenz would receive $24,351.00 in settlement and that the sum included his own attorney fees in the amount of $3,500.00. Prior to his depositing $20,851.00 in his trust account, Benavidez advanced $450.00 to Saenz. He then wrote two checks to Saenz which totaled $18,750. Saenz later executed a partial satisfaction acknowledging the sum of $20,851.00, and Benavidez executed a partial satisfaction of a judgment acknowledging his receipt of $3,500.00 in full payment of his fees. Benavidez kept the balance of Saenz' portion of the settlement in the amount of $1,651.00, falsely advising his client that the District Court had approved additional attorney's fees in that amount. We note that Benavidez has since made restitution to Saenz in this amount pursuant to the recommendation of the disciplinary board. Benavidez' actions nonetheless violated SCRA 1986, 16–105(A), 16–115(A), and 16–804(H). Although commendable, restitution after a finding of misconduct is entitled to no weight as a mitigating factor.

Magdalena Serna retained Benavidez during April of 1985 to represent her in a suit for damages that resulted from personal injury and property damages she sustained in an automobile accident. Benavidez received a draft in the amount of $29,-000.00 from Western Farm Bureau Insurance Company representing the settlement amount from Serna's damages. He then deposited the settlement funds into his trust account, and prior to payment of his client's medical expenses, negotiated a reduction of $218.15 from the bill of the treating physician. Ultimately, Benavidez paid the costs and expenses of litigation and Serna's medical expenses from the settlement proceeds. Some of the medical bills were paid belatedly in part due to Benavidez' own neglect and in part due to difficulties regarding the processing of claims on his client's health insurance. Benavidez' neglect in promptly notifying and disbursing the settlement proceeds to the medical providers from his trust account violated SCRA 1986, 16–115(B).

Benavidez' unethical behavior casts doubt upon his fitness to possess a license to practice law. The Court, however, considers Benavidez' efforts at rehabilitation in recent months as having been made in good faith and as constituting a serious attempt to rid himself of the substance abuse problems that existed during the period in which the cited disciplinary infractions occurred (1985–1987).

The Court believes that an indefinite suspension will adequately ensure the protection of the public. We issue this opinion with the caveat that whether or not Benavidez resumes the practice of law will depend upon the extent of his own ability and willingness to achieve recovery goals that he currently has undertaken. While the judicial and disciplinary systems are not bereft of compassion for troubled lawyers, this compassion must be tempered with the understanding that the protection of the public must be predominant in our consideration of these matters.

IT IS THEREFORE ORDERED that Mike L. Benavidez be and hereby is indefinitely suspended from the practice of law pursuant to SCRA 1986, 17–206(A)(3) effective September 15, 1988. His reinstatement will not be automatic but shall occur only after a reinstatement proceeding conducted pursuant to SCRA 1986, 17–214 wherein Benavidez will have the burden of demonstrating that he has the requisite moral qualifications and is fit to resume the practice of law without endangering the public, the reputation of the profession, or the administration of justice. Any petition for reinstatement must be accompanied by a showing that Benavidez has continued to successfully participate in a substance abuse program and has remained temperate for a protracted period of time. As an additional precondition to petitioning

**524**

for reinstatement, Benavidez must take and pass the Multistate Professional Responsibility Examination.

IT IS FURTHER ORDERED that should Benavidez be successful in any petition for reinstatement he will be placed on supervised probation for a period of one (1) year with specific emphasis on trust account management and the handling of funds entrusted to him by or for his clients.

IT IS FURTHER ORDERED that pursuant to SCRA 1986, 17–213, Joseph M. Holmes, Esq., be and hereby is appointed to inventory all of Benavidez' open files and to take any actions necessary to protect the interests of these clients until they can obtain new counsel. Reasonable costs of this inventory and any costs incurred by any client as the result of Benavidez' suspension will be assessed against Benavidez upon an appropriate showing to this Court and must be paid prior to any application for reinstatement.

IT IS FURTHER ORDERED that Benavidez shall file with this Court on or before September 26, 1988 evidence of his compliance with all of the requirements of SCRA 1986, 17–212, and serve a copy of his affidavit of compliance upon disciplinary counsel.

IT IS FURTHER ORDERED that the Clerk of the Supreme Court remove the name of Mike L. Benavidez from the roll of those persons permitted to practice in New Mexico and that this Opinion be published in both the *New Mexico Reports* and the State Bar of New Mexico *Bar Bulletin*.

Costs in the amount of $4,429.71 are hereby assessed against Benavidez and must be paid to the Disciplinary Board no later than July 1, 1989.

IT IS SO ORDERED.

STOWERS, WALTERS and RANSOM, JJ., concur.

SCARBOROUGH, C.J., and SOSA, Senior J., not participating.